**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| Ronald Ellerman, | : |
|  | : Civil Action No. 15-476(RMB) |
| Plaintiff, | : |
|  | : |
| v. | : **MEMORANDUM, OPINION AND ORDER** |
|  | : |
| Ralph Woodward, M.D., et al., | : |
|  | : |
| Defendants. | : |

**BUMB**, District Judge:

On January 23, 2015, the Clerk received Plaintiff's civil complaint and a coversheet with certified prison trust account statements.  (Doc. No. 1.)  In his complaint, Plaintiff, an inmate incarcerated at Southern State Correctional Facility in Delmont, New Jersey, asserted claims against individual defendants and their employer ("Defendants") under 42 U.S.C. § 1983, for violations of the Eighth and Fourteenth Amendments of the United States Constitution, violation of the New Jersey Constitution, and violation of the Americans with Disabilities Act.

Plaintiff alleges that Defendants discontinued certain of his pain medications for his chronic conditions; ignored his

1

pleas for medical treatment when he fell out of an upper bunk, reinjuring his spine and suffering a new injury to his foot; refused him a pen, thus prohibiting him from seeking medical treatment by writing a Medical Request Slip; destroyed his Medical Request Slips so he would not receive medical attention; transferred him to another prison without first conducting a medical examination; ignored his pleas for treatment of chronic pain; prescribed medications without performing a medical examination; and delayed requests to change his pain medications until he could see a neurologist thirty days later.  (Compl. ¶¶ 16-55.)  Plaintiff seeks money damages, suspension of the Defendants' licenses to practice medicine for twenty-four months,[1] costs and fees, and all other relief for which he may be entitled.  (Id. at 17.)

The Clerk will not file a civil complaint unless the person seeking relief pays the entire applicable filing fee in advance or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915.  By filing a cover letter and his prison trust account statements, Plaintiff seeks to proceed without prepaying fees (in forma pauperis or "IFP",

---

[1] The Court notes The Medical Practices Act vests the New Jersey State Board of Medical Examiners with the authority to regulate the practice of medicine in the State of New Jersey.  In re License Issued to Zahl, 895 A.2d 437, 444 (N.J. 2006)(citing N.J.S.A. 45:9-1 to -27).

pursuant to 28 U.S.C. § 1915.  <u>See</u> Local Civil R. 5.1(f).[2]  If a prisoner seeks permission to file a civil rights complaint with IFP status, the statute requires him to file an affidavit of poverty and prison account statements for the six-month period preceding the filing of the complaint.  28 U.S.C. § 1915(a)(1), (2).

Here, Plaintiff submitted his prison account statements but failed to submit his affidavit of poverty.  Therefore, the IFP application is insufficient, and the Court will deny it without prejudice, allowing Plaintiff to file a properly completed IFP application, pursuant to 28 U.S.C. § 1915(a)(1) and (2).  In the event Plaintiff cures the deficiency in his IFP application, 28 U.S.C. § 1915(e)(2) requires the Court to review the complaint and dismiss the case if it finds that the action is: (1) frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  If the Court dismisses the case for any of these reasons, the Act does not permit the prisoner to have his filing fee returned.

---

[2] The entire fee to be paid in advance of filing a civil complaint is $400, including a filing fee of $350 plus an administrative fee of $50.  A prisoner who is granted IFP status will, instead, be assessed a filing fee of $350, paid in installment payments, and will not be responsible for the $50 administrative fee.

The present complaint is deficient in several respects.  If Plaintiff chooses to resubmit a complaint with his properly completed IFP application, he may wish to correct these deficiencies to avoid summary dismissal of certain of his claims under § 1915(e)(2)(B) and 42 U.S.C. § 1997e.

I.   BACKGROUND

Plaintiff names as Defendants Rutgers University Behavioral Health Center a/k/a Rutgers University Correctional Health Care, Dr. Ralph Woodward, Dr. William Briglia, Dr. Chenna Reddy, Dr. Francis Mao, Nurse Donna Caudill, and John and Jane Does who allegedly discontinued his prescription for the medication Neurontin while he was housed in South Woods Prison.  (Compl. ¶¶ 5-10.)  Plaintiff alleges jurisdiction under 42 U.S.C. § 1983 and § 1988[3] (for violations of the Eighth and Fourteenth Amendments), New Jersey Constitution Art. 1, ¶ 12, federal diversity jurisdiction, and the Americans with Disabilities Act. (Id., ¶¶ 11, 14.)

II.  DISCUSSION

Plaintiff properly asserted jurisdiction based on subject matter of his federal constitutional claims under 42 U.S.C. § 1983 and for violation of the Americans with Disabilities Act

---

[3] 42 U.S.C. § 1988 does not create an independent cause of action.  Roundtree v. City of New York, 778 F.Supp. 614, 617 (E.D.N.Y. 1991).

("ADA"), 42 U.S.C. § 12132.  Plaintiff also asserts diversity jurisdiction for his state law claims.  Under 28 U.S.C. § 1332, however, there must be complete diversity of citizenship among the parties, meaning each Plaintiff is domiciled in a different state than each defendant, and the amount in controversy exceeds $75,000.  In § 1983 cases, an inmate is domiciled, for purposes of jurisdiction, in the state in which he was domiciled before he was incarcerated, unless the inmate plans to be domiciled in another state upon release.  Gay v. Unipak, Inc., Civ. Action No. 10-6221(FSH), 2011 WL 5025116, at *4 (D.N.J. Oct. 20, 2011).  A plaintiff must specifically plead each party's citizenship and show that the plaintiff is domiciled in a different state from each defendant.  Id. (citing American Motorists Ins. Co. v. American Employers' Ins. Co., 600 F.2d 15, 16 (5th Cir.1979); see also Universal Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co., 224 F.3d 139, 141 (2d Cir. 2000).

Here, Plaintiff has not alleged facts to establish diversity jurisdiction, and he may wish to cure this deficiency if he resubmits a complaint.  Moreover, if diversity of citizenship does not exist, unless at least one of Plaintiff's federal law claims survives dismissal, the Court will not be required to exercise supplemental jurisdiction over Plaintiff's state law claims.  Aruanno v. Main, 467 F. App'x 134, 138 (3d Cir. 2012).

Finally, Plaintiff may choose to cure the deficiencies in the present complaint by pleading sufficient facts against each defendant to survive dismissal based on failure to state a claim upon which relief may be granted. To state an inadequate medical care claim under the Eighth Amendment's proscription against cruel and unusual punishment, as applied to the states through the Fourteenth Amendment, an inmate must allege facts showing the defendant's conduct constituted "unnecessary and wanton infliction of pain" or that the defendant was deliberately indifferent to the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A medical need is "serious," in satisfaction of the second prong of the Estelle test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)(quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir.1981)). Denial of or delay in treatment that causes unnecessary and wanton infliction of pain may also constitute a serious medical need. Id. (citing Estelle, 429 U.S. at 103). "In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id. (citations omitted); Andrews v. Camden County, 95 F.Supp.2d 217, 227

(D.N.J. 2000)(same); Price v. Corr. Med. Serv., 493 F.Supp.2d 740, 745 (D.Del. 2007)(same).

An allegation of medical malpractice or simple negligence, however, does not rise to the level of a constitutional violation. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Nor does a disagreement as to the proper medical treatment state a constitutional violation. Id. (citing Lanzaro, 834 F.2d at 346 (3d Cir. 1987)(citations omitted). See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)(by itself, physician's decision to substitute medications or withhold a particular medication, without knowledge that another physician had indicated treatment would fail without the particular medication, does not indicate deliberate indifference.)

Deliberate indifference against a particular defendant may exist under a variety of situations. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). Deliberate indifference exits where "'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care'" or where "[s]hort of absolute denial ... 'necessary medical treatment [i]s ... delayed for non-medical reasons,' " or where "'prison authorities prevent an inmate from receiving recommended treatment.'" Lanzaro, 834 F.2d at 346 (citations omitted); Barkes v. First Corr. Med. Inc., 766 F.3d 307, 320-25) (3d Cir.

7

2014)(describing deliberate indifference standard applicable to supervisory prison officials).

In order for a government entity (assuming the entity is not entitled to sovereign immunity under the Eleventh Amendment) to be liable under § 1983 for the actions or inactions of its employees, a plaintiff must allege that policy or custom of that entity caused the alleged constitutional violation. Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Bd. Of County Comm'rs of Bryan County Oklahoma v. Brown, 520 U.S. 397, 404 (1997)). Plaintiff seeks to hold Rutgers University Correctional Health Care (UCHC) liable under § 1983 for the alleged constitutional violations by its employees. Plaintiff, however has not alleged a relevant policy or custom that violated his constitutional rights. Nor has he alternatively alleged an action by a government employee that may be deemed to have been taken pursuant to a policy or custom of the employer. Id. (describing three situations where a government employee's acts may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983).

Plaintiff's specific allegations against Dr. Chenna Reddy, for reducing or discontinuing an unspecified pain medication without performing a physical examination, do not, without more,

8

rise to the level of a constitutional violation.  (Compl. ¶¶ 19-21.)  See White, 897 F.2d at 110 (mere disagreement with medical treatment does not state a constitutional violation).

The allegations in Paragraph 42 of the present complaint are also deficient.  Plaintiff alleged "the aforenamed defendants" gave clearance for Plaintiff to be transported to another prison without first seeing a certified medical doctor.  First, it is unclear who allegedly gave the clearance or even whether clearance was necessary.  Second, it is unclear how giving clearance for transportation even states deliberate indifference to a serious medical need.

The allegations in Paragraph 48 are deficient because Plaintiff does not allege facts to establish deliberate indifference by any particular defendant involved with the decision not to renew his prescription for Norco.  The allegations in Paragraphs 51 are also deficient because the "Mental Health Department" or its employees at Northern State Prison had no constitutional duty to "step in and make [recommendations]" to the "Medical Department" on Plaintiff's behalf.  Spruill, 372 F.3d at 236. (non-physician defendant is not deliberately indifferent to an inmate's serious medical needs when inmate is being treated by a prison doctor, unless the non-physician has reason to believe the inmate is being mistreated or not treated).  Additionally, it is unclear what

9

the John and Jane Doe Defendants, who were allegedly phycologists and psychiatrists, in the Northern State Prison Mental Health Department, knew about Plaintiff's serious medical needs, and what they should have, but failed to do, to alleviate Plaintiff's pain.

Plaintiff alleges constitutional and other violations by John and Jane Doe Defendants.  (Compl. ¶¶ 31, 52.)[4]  If Plaintiff refiles a complaint containing allegations against unnamed Doe Defendants, Plaintiff will be given a discrete period of time to discover the names of those defendants, and to amend his complaint to substitute the defendant(s)' name(s), and plead specific facts sufficient to establish the deliberate indifference of the defendant(s), or the elements of any other asserted cause of action.  See Singletary v. Penn. Dept. of Corr., 266 F.3d 186, 202, n.5 (3d Cir. 2001)(discussing proposed amended complaints that seek to replace a "John Doe" in an original complaint with a defendant's real name).

Finally, to state a claim of supervisory liability for inadequate medical care in violation of the Eighth Amendment, a plaintiff must plead facts establishing that a prison official, "by virtue of his or her own deliberate indifference to known

---

[4] It appears that Plaintiff intends to state a "John or Jane Doe" claim in Paragraph 32 of the complaint, against the unidentified nurse who would not give him a pen to complete a written request for medical treatment after he fell and injured himself.

10

deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." Barkes v. First Corr. Med. Inc., 766 F.3d 307, 320 (3d Cir. 2014). Conclusory allegations are insufficient to state a claim upon which relief may be granted. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)(conclusory nature of allegations "disentitled them" to the presumption of truth on motion to dismiss).

Plaintiff's allegations of supervisory liability against Dr. Ralph Woodward, the Director of Health Services for the New Jersey Department of Corrections, fail to meet this standard. Although Plaintiff alleged certain defendants acted under the direction of Dr. Woodward, these allegations were unsupported by any *facts* to show the actions were taken under Dr. Woodward's direction. (Compl. ¶¶ 5, 19, 37, 41, 43, 51, 52.)[5] If Plaintiff can allege facts to support his conclusion regarding Dr. Woodward, he may wish to cure this deficiency to avoid dismissal of the supervisory claims.

Plaintiff also named William Briglia, D.O., the Regional Medical Advisor for Rutgers University Behavioral Health Care as

---

[5] The Court also notes Paragraph 31 of the complaint is deficient because it ambiguously refers to the "above named Medical Provider" and the "aforenamed defendants." It is not obvious from the complaint which defendants Plaintiff is referring to in this paragraph.

a defendant. (Compl. ¶ 6.) Plaintiff did not allege any specific illegal conduct by Dr. Briglia. The Court can only speculate that Plaintiff wanted to assert supervisory liability against Dr. Briglia for the conduct of other employees of UCHC. If Plaintiff wishes to pursue a claim against Dr. Briglia that would survive summary dismissal, he may wish to plead facts sufficient to establish supervisory liability, as discussed above.

Plaintiff alleged that the Defendants' conduct violated the ADA. (Compl. ¶¶ 31, 52.) To state a claim for relief under Title II of the ADA, "an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Brown v. Deparlos, 492 F. App'x. 211, 215 (3d Cir. 2012)(citing 42 U.S.C. § 12132). Plaintiff has not alleged that he is a qualified individual with a disability or that he was denied adequate medical care based on discrimination against him due to his disability. Plaintiff may wish to cure this deficiency if he brings a denial of medical care claim under the ADA in a new complaint.

The Court further notes that Plaintiff entitled the complaint "Civil Rights Complaint of Negligence, Deliberate

12

Indifference." (Compl. at 1.) Plaintiff also uses the word "malpractice" in the complaint. (Compl. ¶ 52.) As discussed above, negligence and medical malpractice do not rise to the level of an Eighth Amendment Constitutional violation. It is not clear that Plaintiff wishes to assert state law claims of negligence or medical malpractice against any particular defendant. If Plaintiff intended to do so, and he submits a new complaint, he may wish to cure the deficiency in the present complaint by asserting the elements of a medical malpractice claim under New Jersey law. See Natale, 318 F.3d at 579 (describing elements of a New Jersey malpractice claim, and holding expert affidavit was not required to be attached to the complaint to avoid dismissal where common knowledge made the malpractice claim apparent).

IT IS, therefore, on this **19th** day of **February 2015**,

**ORDERED** that Plaintiff's application seeking to proceed in forma pauperis in this matter, Doc. No. 1-1, is denied. Such denial is without prejudice, and Plaintiff may renew that application by submitting, within thirty days from the date of entry of this Memorandum Opinion and Order, a properly executed IFP application, executed in accordance with the guidance provided herein; and it is further

**ORDERED** that the Clerk shall administratively terminate this matter by making a new and separate entry reading, "CIVIL

13

CASE TERMINATED." Such termination shall be subject to reopening in the event Plaintiff timely submits a properly executed IFP application; and no statement in the Memorandum Opinion and Order shall be construed as withdrawal of this Court's jurisdiction over this matter; and it is further

**ORDERED** that, in the event Plaintiff elects to submit a properly executed IFP application, he may accompany that submission with a complaint that details the facts of his claims in accordance with the guidance provided to him herein; and it is finally

**ORDERED** that the Clerk shall serve this Order upon Plaintiff by regular U.S. Mail, together with a blank form "Prisoner Applying To Proceed In Forma Pauperis In A Civil Rights Case" and a blank form "Prisoner Civil Rights Complaint."

<u>s/Renée Marie</u>
RENÉE MARIE BUMB
United States District Judge